IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
2:20 pm, Feb 23, 2022

In re:                                          )
                                                )
                                                )   Chapter 13
JOSEPH E. SMITH and DENA D. SMITH, )
                                                )   Number 15-41863-EJC
         *Debtors*.                             )
_____)
                                                )
JOSEPH E. SMITH and DENA D. SMITH, )
                                                )
         *Movants*,                             )
                                                )
v.                                              )
                                                )   Contested Matter
O. BYRON MEREDITH, III, Chapter 13     )
Trustee                                         )
                                                )
         *Respondent*.                          )
_____)

## OPINION ON APPLICATION TO EMPLOY, MOTION TO APPROVE PERSONAL INJURY SETTLEMENT *NUNC PRO TUNC*, MOTION FOR TURNOVER, AND MOTION FOR SANCTIONS

Before the Court are the Motion to Appoint Attorney for Settlement of Personal Injury Claim (the "Application to Employ") (dckt. 73) and the Motion for Approval of Settlement of Personal Injury Claim Nunc Pro Tunc (the "Motion to Approve Settlement") (dckt. 77) filed by Joseph E. Smith and Dena D. Smith, the

1

Debtors in this Chapter 13 case. The Chapter 13 Trustee, O. Byron Meredith, III, opposes both the Application to Employ and, to a limited extent, the Motion to Approve Settlement (dckt. 82, 87) and has filed a Motion for Turnover (dckt. 111) and a Motion for Sanctions (dckt. 112), which are also pending before the Court.

The Debtors filed this case on November 10, 2015, and their Chapter 13 plan was confirmed on April 11, 2016. Days later, on April 26, 2016, both Debtors and their adult son were injured in a car accident. They and their son subsequently hired William F. Heitmann, III, to represent them in their personal injury claims arising from the accident. Upon obtaining a settlement of Mr. Smith's claim, on July 17, 2017, Mr. Heitmann sought the Court's approval of that settlement and of his employment by Mr. Smith in connection therewith, both of which were granted by the Court. Over one year later, on August 24, 2018, Mr. Heitmann settled Mrs. Smith's personal injury claim for $45,000.00. Without filing an employment application or a motion to approve the settlement, Mr. Heitmann disbursed the settlement proceeds, including remitting net proceeds of $32,500.00 to Mrs. Smith and paying himself fees and expenses in the amount of $11,414.71.

Acting through their bankruptcy counsel, and nearly three years after Mr. Heitmann's disbursements in 2018, the Debtors filed the instant Application to Employ Mr. Heitmann to represent Mrs. Smith on May 12, 2021, and filed the instant Motion to Approve Settlement on May 26, 2021. In this manner, the Debtors seek

2

to accomplish after the fact what might have been done three years ago. More specifically, the Debtors ask the Court to: (1) approve the services of a lawyer whose work has already been done; (2) authorize the payment of fees to that lawyer when he has already paid himself; (3) bless a personal injury settlement that has already been consummated; and (4) countenance the disbursement of net proceeds to the Debtors who have already received and spent that money, including a substantial amount of non-exempt proceeds.

The Chapter 13 Trustee objected to most of the Debtors' requested relief and, following a September 23, 2021 evidentiary hearing, filed the instant Motion for Turnover and Motion for Sanctions against Mr. Heitmann. In the process, the parties have framed the issues in an awkward and cumbersome set of motions and counter-motions. The real issue in this case is what to do about estate assets that have been disbursed without Court approval and arguably to the prejudice of creditors, and from whom such assets shall be recovered, if at all.

According to the Trustee, the bankruptcy estate would have received a total of $21,185.22 of Mrs. Smith's settlement proceeds as nonexempt property of the estate if approval of the settlement had been properly sought in 2018. Although the Trustee does not oppose the terms of Mrs. Smith's settlement or, at present, seek the return of the non-exempt proceeds from the Debtors, he does object to Mr. Heitmann's retention of $11,414.71 in attorney's fees and expenses without Court

3

approval. The Trustee requests that Mr. Heitmann be ordered to turn over that sum

to the bankruptcy estate, as well as the sum of $10,939.63, representing the

additional amount that the Trustee alleged was needed for general unsecured

creditors to receive a 100% dividend in the case.[1] In the present posture of the case,

the Trustee seeks neither turnover of the nonexempt proceeds from the Debtors nor

dismissal of the case of the case for their failure to account for property of the estate.

For the reasons set forth below, the Court will deny as moot the Motion to Approve

Settlement, deny the Motion for Sanctions, and deny without prejudice the Motion

for Turnover. Additionally, the Court will deny the Application to Employ and will

direct Mr. Heitmann to disgorge the sum of $11,414.71.


## I. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28

U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge

---

[1] The Trustee has alternatively requested that Mr. Heitmann be required to turn over, in addition to $11,414.71 in attorney's fees and expenses, an amount totaling either $9,770.51 or $10,939.63. (Dckt. 111, p. 9). The amount of $9,770.51, when added to the attorney's fees and expenses, would result in $21,185.22, which the Trustee alleges is "the amount that the bankruptcy estate would have received had [Mr. Heitmann] timely filed" an employment application and a motion to approve Mrs. Smith's settlement. (Dckt. 111, p. 9). The Trustee estimated that unsecured claims would receive a 98% distribution. Alternatively, the amount of $10,939.63 would, when added to the attorney's fees and expenses, result in $22,354.34, which, according to the Trustee, would allow the estate "to pay unsecured creditors a 100% dividend." (Dckt. 111, p. 9). For simplicity, the Court will refer to the requested additional funds as $10,939.63.

4

Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2). The Court makes the following findings of fact and conclusions of law pursuant to Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. Factual Background

The relevant facts in this case are undisputed. On November 10, 2015, the Debtors, represented by John E. Pytte, filed a Chapter 13 petition commencing this case. (Dckt. 1). As reflected by the claims register, creditors filed twenty-five claims in the case, for a total sum of $159,584.43, of which $53,346.16 represented general unsecured debt. Initially filed on the petition date, the Debtors' Chapter 13 plan was subsequently amended on December 17, 2015, and again on January 13, 2016. (Dckt. 2, 19, 32). Under the terms of their second amended plan, the Debtors proposed to pay to the Chapter 13 Trustee the sum of $1,280.00 per month for a period of 60 months. (Dckt. 32, p. 1, ¶ 1). The plan further stated that "[a]llowed general unsecured claims . . . will be paid a 0% dividend or a prorata [sic] share of $3,000.00, whichever is greater." (Dckt. 32, p. 2, ¶ 2(i)). The Chapter 13 Trustee moved for confirmation of the plan on the condition that "the Debtors shall guarantee a minimum to general unsecured creditors of $6,000.00, paid pro rata," which term

was "incorporated into the confirmed Plan." (Dckt. 41, p. 1). On April 11, 2016, the Court confirmed the Debtors' plan. (Dckt. 42).

Fifteen days after confirmation, on April 26, 2016, the Debtors and their adult son were injured in an automobile accident caused by a third party. (9/23/2021 Tr., pp. 27-28, 36-37).[2] The next day, April 27, 2016, Mr. Smith called his bankruptcy attorney, Mr. Pytte, and informed him of the accident. (9/23/2021 Tr. at pp. 8, 103-04). On that same day, an amended Schedule A/B was filed to disclose as potential assets the claims arising from the accident. (Dckt. 43). Specifically, in response to question 34, which requires the debtor to disclose "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims," the Debtors answered by filling in the box as follows:

> Insurance proceeds – auto accident
>
> amounts unknown and contingent

(Dckt. 43, p. 5, ¶ 34). In the space for indicating the value of the claim, the Debtors typed "Unknown." (Dckt. 43, p. 5, ¶ 34).

On May 7, 2016, the Debtors and their son hired William F. Heitmann, III, to represent them in their personal injury claims arising from the automobile accident.[3]

---

[2] This designation shall refer to the transcript of the September 23, 2021 hearing. (Dckt. 106).

[3] Mr. Smith's attorney-client contract with Mr. Heitmann is dated May 7, 2016. (Ex. "T-8"). No such contract between Mrs. Smith and Mr. Heitmann is in the record, but the undisputed testimony was that both spouses hired Mr. Heitmann on the same day.

(9/23/2021 Tr., p. 27). While Mr. and Mrs. Smith recall telling Mr. Heitmann at that May 2016 meeting that they were in bankruptcy, Mr. Heitmann does not share that recollection. (9/23/2021 Tr. pp. 27, 84-85, 102-03). On May 16, 2017, over a year after the accident, the Debtors again amended their Schedule A/B to indicate that they were each being represented by Mr. Heitmann in a personal injury claim arising from the accident. (Dckt. 48). The Debtors' response to question 34, as amended, appeared as follows:

| Insurance proceeds – auto accident amounts unknown and contingent |
|---|
| Personal Injury claim Joseph E. Smith value contingent and unknown, William F. Heitmann, III, Pooler, GA, representing Debtor |
| Personal Injury Claim Dena D. Smith arising out of automobile accident value contingent and unknown Willia [sic] F. Heitmann, III attorney |

(Dckt. 48, pp. 5-6, ¶ 34). In other words, the Debtors left unchanged the first box and added a separate box for each spouse's personal injury claim. Next to each of the three boxes, the Debtors indicated that the claims were of an "[u]nknown" value. (Dckt. 48, pp. 5-6, ¶ 34).

As Mr. Heitmann later testified, the at-fault driver held the minimum liability coverage required in the State of Georgia.[4] (9/23/2021 Tr., pp. 72-73, 90-91). Mr.

---

[4] *See* O.C.G.A. § 33-7-11(a)(1)(A).

7

and Mrs. Smith also had uninsured motorist insurance. (9/23/2021 Tr., pp. 73-74). Mr. Smith's injuries were less severe than those of Mrs. Smith,[5] and therefore Mr. Heitmann settled his claim first.[6] (9/23/2021 Tr., p. 89, 105). On July 17, 2017, Mr. Heitmann filed an employment application entitled "Motion to Approve Employment of Counsel for Settlement of Personal Injury Claim." (Dckt. 51). That application was styled, incorrectly, "In Re: Joseph Smith," which failed to include Mrs. Smith as a Debtor in the case. (Dckt. 51, p. 1). According to the application, Mr. Smith "suffered personal injuries as a result of an automobile collision that occurred on April 26, 2016" and "sought to employ William F. Heitmann III to represent him in a personal injury claim from said collision." (Dckt. 51, p. 1, ¶ 1). The final paragraph stated that "the undersigned Debtor, JOSEPH SMITH" requested "entry of an order authorizing him to employ and retain William F. Heitmann III pursuant to the terms and conditions as herein set forth." (Dckt. 51, p. 1, ¶ 7). No mention of Mrs. Smith was made in the employment application, but, of course, it was filed by Mr. Heitmann in the Debtors' joint case under the correct case number.

---

[5] Mrs. Smith broke both arms in the accident, resulting in nerve damage and the need for orthopedic implants. (9/23/2021 Tr., pp. 28, 35-37, 40-41).

[6] Mr. Heitmann also settled the Debtors' son's claim for $45,000.00. (9/23/2021 Tr., pp. 73-74).

On that same day, July 17, 2017, Mr. Heitmann filed a "Motion to Approve Settlement of Personal Injury Claim [and] Disbursement of Proceeds." (Dckt. 52). Like the contemporaneous employment application, that motion was also incorrectly styled "In Re: Joseph Smith" and contained no reference to Mrs. Smith. The first paragraph stated that "[o]n April 26, 2016, Debtor, JOSEPH SMITH, suffered personal injuries as a result of an automobile collision caused by a third party." (Dckt. 52, p. 1, ¶ 1). The motion went on to state that Mr. Smith was offered a settlement in the amount of $10,000.00, of which $2,500.00 represented attorney's fees due to Mr. Heitmann, $92.43 represented expenses paid by Mr. Heitmann, and $539.00 represented medical bills to be paid from the proceeds, leaving $6,868.57 as property of the Debtor. (Dckt. 52, p. 1, ¶¶ 2-4). On July 18, 2017, the Court entered an Order Appointing Attorney/Special Counsel, which stated that "the Debtor, Joseph E. Smith" was "authorized to employ the services of William F. Heitmann, III" subject to any objections filed within twenty-one days. (Dckt. 56). No party in interest objected to Mr. Smith's employment of Mr. Heitmann.

The Debtors, again acting through their bankruptcy counsel, Mr. Pytte, amended their Schedule A/B on July 25, 2017, to disclose the amount of Mr. Smith's settlement. (Dckt. 59). As amended, the Debtor's response to question 34 appeared as follows:

| Insurance proceeds – auto accident |
| --- |

| |
|---|
| amounts unknown and contingent |
| Personal Injury claim Joseph E. Smith<br>William F. Heitmann, III, Pooler, GA, representing Debtor<br>Gross settlement amount: $10,000<br>Attorney Fees: $2,500<br>Expenses: $92.43<br>Medicals: $539.00<br>NET TO DEBTOR $6,868.57 |
| Personal Injury Claim Dena D. Smith arising out of<br>automobile accident<br>value contingent and unknown<br>Willia [sic] F. Heitmann, III attorney |

(Dckt. 59, pp. 5-6, ¶ 34). Thus, the second box was amended to reflect the dollar amounts set forth in the motion to approve Mr. Smith's settlement (dckt. 52), while the first and third boxes remained unchanged from the prior amendment. The claim amounts listed next to the first and third boxes continued to indicate that the values of those claims were unknown, but the value listed next to the second box, representing Mr. Smith's claim, was changed to $6,868.57. (Dckt. 59, pp. 5-6). In that same filing, the Debtors amended their Schedule C to claim a $6,868.57 exemption arising from the personal injury claim of Mr. Smith pursuant to O.C.G.A. § 44-13-100(a)(11)(D).[7] (Dckt. 59, p. 9, ¶ 2).

---

[7] This statute permits a debtor to exempt property traceable to "[a] payment, not to exceed $10,000.00, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent[.]" O.C.G.A. § 44-13-100(a)(11)(D).

On August 2, 2017, Mr. Heitmann filed a proposed order on the motion to approve Mr. Smith's settlement. (Dckt. 61). Notably, in this proposed order the case was styled "In Re: Joseph Smith," consistent with Mr. Heitmann's previous filings in the case. (Dckt. 61, p. 1). Although the Clerk did not enter a deficiency notice, Mr. Heitmann filed an amended proposed order two days later, on August 4, 2017, correctly styling the case "In Re: Joseph Smith and Dena Smith." (Dckt. 63, p. 1). In other words, at least as of August 4, 2017, Mr. Heitmann was aware that both Mr. and Mrs. Smith were debtors in this Chapter 13 case.

The motion to approve Mr. Smith's settlement came on for hearing on August 29, 2017. (Dckt. 62). At the hearing, Mr. Heitmann told the Court that he "represent[ed] Joseph *and* Dena Smith for an April 26, 2016 accident." (8/29/2017 Tr., p. 3) (emphasis added).[8] After Mr. Heitmann recited the terms of Mr. Smith's settlement, the Court inquired as to whether Mr. Smith was satisfied with those terms, and he said that he was. (8/29/2017 Tr., pp. 3-4). At the conclusion of the hearing, the Court orally approved the settlement. (8/29/2017 Tr., p. 4). On September 1, 2017, the Court entered the Order Approving Settlement of Personal Injury Claim. (Dckt. 66). In accordance with the terms set forth in the motion and recited by Mr. Heitmann at the hearing, the order stated that the $6,868.57 net amount of the settlement would be disbursed to Mr. Smith. (Dckt. 66, p. 1).

---

[8] This designation shall refer to the transcript of the August 29, 2017 hearing. (Dckt. 99).

The Debtors completed their Chapter 13 plan payments in November of 2020, with general unsecured creditors having received a sixty-five percent dividend. (9/23/2021 Tr., p. 9). At this stage, it appeared that all was well with the Debtors' case. But after the Debtors made their final plan payment, no discharge was entered, so they contacted Mr. Pytte to inquire about the status of their case. (9/23/2021 Tr., p. 38). It was at this point that the case became complicated.

On April 19, 2021, the Debtors again amended their Schedule A/B and Schedule C. (Dckt. 72). This time, in response to question 34, the Debtors deleted the first box, which had previously indicated that the amounts of the claim were unknown and contingent. (Dckt. 72, p. 5). The second box, pertaining to Mr. Smith's settlement, was unchanged. (Dckt. 72, p. 6). But the third box was amended to disclose that Mrs. Smith had a net recovery in the amount of $32,500.00. (Dckt. 72, p. 6). As amended, then, the boxes appeared as follows:

| |
|---|
| Personal Injury claim Joseph E. Smith<br>William F. Heitmann, III, Pooler, GA, representing Debtor<br>Gross settlement amount: $10,000<br>Attorney Fees: $2,500<br>Expenses: $92.43<br>Medicals: $539.00<br>NET TO DEBTOR $6,868.57 |
| Personal Injury Claim Dena D. Smith arising out of<br>automobile accident<br>value contingent and unknown<br>Willia [sic] F. Heitmann, III attorney<br>net Co-Debtor recovery $32,500 |

12

(Dckt. 72, p. 6). Thus, the only new language added by the Debtors was the phrase "net Co-Debtor recovery $32,500" in the box pertaining to Mrs. Smith's claim. Where the value of Mrs. Smith's claim was previously listed as "Unknown," it now stated "$32,500.00."[9] (Dckt. 72, p. 6). In that same filing, the Debtors amended their Schedule C to claim two exemptions in Mrs. Smith's personal injury claim: a $10,000.00 exemption under O.C.G.A. § 44-13-100(a)(11)(D) and a $1,314.78 exemption under O.C.G.A. § 44-13-100(a)(6).[10] (Dckt. 72, p. 9).

What was *not* revealed in these amended schedules, however, was that Mr. Heitmann settled Mrs. Smith's claim for $45,000.00 over two-and-a-half years earlier on August 24, 2018, disbursed funds to medical providers, remitted net proceeds of $32,500.00 to Mrs. Smith, and paid himself the sum of $11,414.71 in fees and expenses pursuant to his contingency fee agreement. Mr. Heitmann sought neither approval of his employment for Mrs. Smith nor approval of Mrs. Smith's settlement.

On May 12, 2021, the Debtors, through their bankruptcy counsel Mr. Pytte, filed the instant Application to Employ Mr. Heitmann to represent Mrs. Smith.

---

[9] The Debtors' failure to delete the statement "value contingent and unknown" in the box pertaining to Mrs. Smith's claim appears to be a typographical error. (Dckt. 72, p. 6).

[10] Known colloquially as the "wildcard" exemption, this statute permits a debtor to exempt "[t]he debtor's aggregate interest, not to exceed $1,200.00 in value plus any unused amount of the exemption, not to exceed $10,000.00, provided under paragraph (1) of this subsection, in any property[.]" O.C.G.A. § 44-13-100(a)(6).

13

(Dckt. 73). That motion states that Mrs. Smith "employed attorney William F. Heitmann, III of the law firm of Heitmann & Associates, LLC as counsel to represent her in a personal injury claim arising out of an auto accident occurring April 26, 2016." (Dckt. 73, p. 1). Unaware of the circumstances surrounding the August 24, 2018 settlement and the corresponding disbursements, on May 17, 2021, the Court entered an order conditionally appointing Mr. Heitmann as special counsel subject to the objection by any party in interest within twenty-one days. (Dckt. 75).

On May 26, 2021, the Debtors, again through Mr. Pytte, filed the instant Motion to Approve Settlement. (Dckt. 77). In that motion, the Debtors disclosed for the first time that Mrs. Smith's "claim was settled on or about August 24th, 2018" and that "[t]he net recovery was disbursed to Co-Debtor, Dena Smith, and ostensibly, the balance of the funds were disbursed pursuant to the settlement statement." (Dckt. 77, p. 2). According to the motion, Mrs. Smith's claim was settled in the amount of $45,000.00, of which $11,250.00 represented attorney's fees due to Mr. Heitmann, $164.71 represented expenses paid by Mr. Heitmann, and $1,085.29 represented medical bills, leaving a net recovery of $32,500.00 for Mrs. Smith.[11] (Dckt. 77, p. 1).

---

[11] Mrs. Smith's signature did not appear on a settlement statement attached to the Motion to Approve Settlement. (Dckt. 77, p. 4).

14

The Chapter 13 Trustee timely objected to the Debtors' Application to Employ on June 1, 2021. (Dckt. 82). In that objection, the Chapter 13 Trustee represented that the Debtors had completed all payments under their plan but that the case was being held open "for resolution of Ms. Smith's claim and potential further distributions to unsecured creditors." (Dckt. 82, p. 2). According to the Chapter 13 Trustee, Mr. Heitmann "impermissibly distributed estate assets without Court approval, including awarding himself fees and costs" thereby causing "irreparable damage to the creditors in [the] case." (Dckt. 82, p. 3). Arguing that the Debtors and Mr. Heitmann failed to satisfy the standard for *nunc pro tunc* approval of a professional's employment, the Chapter 13 Trustee requested "that the Application be denied and for such other and further relief as may be just and proper." (Dckt. 82, p. 3).

Additionally, on June 24, 2021, the Chapter 13 Trustee filed a response in opposition to the Debtors' Motion to Approve Settlement. (Dckt. 87). Although the Chapter 13 Trustee stated that he did not oppose the settlement of Mrs. Smith's personal injury claim, he did oppose both the payment of $11,414.71 to Mr. Heitmann for fees and expenses and Mrs. Smith's net recovery of $32,500.00. Mrs. Smith, he asserted, was only entitled to retain as exempt property $11,314.78 of the net proceeds, and the remaining $21,185.22 constituted "property of the bankruptcy estate and should be distributed to unsecured creditors in the case." (Dckt. 87, p. 1).

15

The Chapter 13 Trustee thus requested that the Court "approve the settlement of Debtor's personal injury claim conditioned **upon the turnover of funds to the Chapter 13 Trustee** of all non-exempt funds and funds previously disbursed to the personal injury attorney; and, for such other and further relief as this Court may deem necessary and proper." (Dckt. 87, p. 1) (emphasis in original).

A telephonic hearing on the Application to Employ and the Motion to Approve Settlement, along with the Chapter 13 Trustee's responses thereto, was held on June 29, 2021. (Dckt. 83, 84). At that hearing, the Court heard argument from Mr. Pytte and from counsel for the Chapter 13 Trustee. The Debtors and Mr. Heitmann were also present on the call. Mr. Pytte stated that he first learned about Mrs. Smith's settlement when Mr. Smith called his office to ask about the status of the Debtors' discharge. For his part, Mr. Heitmann stated that in 2018 he did not know that Mrs. Smith was a joint debtor in Mr. Smith's bankruptcy case, but Mrs. Smith disputed that assertion. When the Court asked whether Mrs. Smith still had any of the $32,500.00 net proceeds disbursed to her by Mr. Heitmann, she stated that she did not. At the conclusion of the hearing, the Court announced that the pending matters would be continued to an in-person evidentiary hearing.

That hearing took place on September 23, 2021 (dckt. 89, 92), and was attended by Mr. and Mrs. Smith, Mr. Pytte, Mr. Heitmann, and counsel for the Chapter 13 Trustee. The Trustee's counsel stated that the Trustee was not presently

16

seeking to have the Debtors return any non-exempt funds to the estate. (9/23/2021 Tr., pp. 119, 124). Rather, counsel requested that Mr. Heitmann be required to return his fees and expenses in the amount of $11,414.71. Additionally, counsel requested that the Court order Mr. Heitmann to "pay to the trustee as a sanction for the benefit of the estate an additional amount of $10,939.63," for a total of $22,354.34. (9/23/2021 Tr., p. 9). When the Court expressed concern over notice, or lack thereof, to Mr. Heitmann of the requested sanctions, counsel acknowledged that no motion for sanctions was pending on the docket. (9/23/2021 Tr., pp. 10-11). Counsel, however, argued that the Court should construe the prayer in the Trustee's previously-filed response, requesting "such other and further relief as [the] Court may deem necessary and proper," (dckt. 87, p. 1) as a request for sanctions under § 105 of the Bankruptcy Code.[12] (9/23/2021, pp. 127-29).

All exhibits submitted by the Debtors and by the Trustee were admitted into evidence by stipulation.[13] (9/23/2021 Tr., pp. 19-25). The Court then heard testimony from Mrs. Smith (9/23/2021 Tr., pp. 25-48), from Mr. Heitmann

---

[12] Section 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). *See also Law v. Siegel*, 571 U.S. 415, 420-21 (2014).

[13] The Debtors submitted thirteen exhibits, and the Chapter 13 Trustee submitted eleven. *See* Exhibit and Witness List. (Dckt. 104).

(9/23/2021 Tr., pp. 52-100), and from Mr. Smith (9/23/2021 Tr., pp. 101-11). After hearing their testimony, the Court made limited factual findings that all three witnesses were credible, notwithstanding certain minor discrepancies in their testimony. (9/23/2021 Tr., pp. 130-31). At the conclusion of the hearing, the Court took the pending matters under advisement and directed that any briefs be filed within ten days, with an additional five-day response time. (9/23/2021 Tr., p. 112).

On October 4, 2021, the Chapter 13 Trustee filed a document entitled "Trustee's (1) Supplemental Brief and (2) Continued Request for Turnover Order, or, in the Alternative, for Sanctions." (Dckt. 105). Pursuant to a deficiency notice (dckt. 108), the Trustee refiled his brief (dckt. 110) and filed separate motions for turnover (dckt. 111) and for sanctions. (Dckt. 112). In the Motion for Turnover, the Trustee requested that Mr. Heitmann be required to turn over "property of the bankruptcy estate in the total amount of $22,354.34[.]" (Dckt. 111, p. 6). In the alternative, the Trustee asserted that the case should be dismissed if the Court does not require Mr. Heitmann to turn over any funds to the estate. (Dckt. 111, pp. 9-10). Thus, in the Motion for Turnover, the Trustee seeks turnover from Mr. Heitmann, but not from the Debtors; without styling the motion as a motion to dismiss, the Trustee seeks dismissal as an alternative remedy.

In the Motion for Sanctions, the Trustee argued that the Court should impose sanctions on Mr. Heitmann pursuant to its inherent powers or its statutory authority

18

under § 105 based on his failure "to obtain bankruptcy court approval to consummate a personal injury settlement and to disburse settlement funds." (Dckt. 112, pp. 6-10). The requested amount of the sanction was $10,939.63, an amount sufficient, when added to the disgorged fees and expenses of $11,414.71, to pay unsecured claims in full. (Dckt. 112, p. 10). In other words, the Trustee argued that Mr. Heitmann's fees and costs in the amount of $11,414.71 should be disgorged, and, further, advanced two separate theories by which Mr. Heitmann should be required to pay the estate an additional $10,939.63: first, that his conduct damaged the estate in that amount, and second, that he should be sanctioned for such conduct.

A continued hearing on the motions for turnover and for sanctions was held on December 2, 2021. (Dckt. 113). No additional evidence was presented at that hearing; the Court instead heard argument from counsel for the Chapter 13 Trustee and from Mr. Heitmann. Without conceding that he should be penalized for initially failing to disclose Mrs. Smith's personal injury settlement, Mr. Heitmann argued that any penalty should be limited to refunding the attorney's fees that he received from that settlement. At the conclusion of the hearing, the Court took under advisement the Motion for Turnover and the Motion for Sanctions. Both of those motions, along with the Application to Employ and the Motion to Approve Settlement, are now ripe for ruling.

19

## III. <u>Discussion</u>

A. <u>The Motion to Approve Settlement is Moot</u>

Nearly three years after the settlement of Mrs. Smith's personal injury claim, the Debtors, through their bankruptcy counsel, belatedly moved for Court approval of that settlement. The Chapter 13 Trustee does not oppose the $45,000.00 gross amount of the settlement. (Dckt. 87, p. 1; 9/23/2021 Tr., p. 17). He argues that "the motion to approve Mrs. Smith's personal injury settlement with regard to the amount of $45,000.00 appears moot" because "the funds have already been accepted and improperly disbursed." (Dckt. 110, p. 13). Instead, the Trustee opposes the payment to Mr. Heitmann of $11,414.71 in attorney's fees and expenses. As to the remaining $32,500.00, which Mr. Heitmann disbursed to Mrs. Smith without the Court's authorization, the Chapter 13 Trustee asserted that Mrs. Smith is only entitled to retain $11,314.78 as exempt and that the remaining $21,185.22 is property of the bankruptcy estate. (Dckt. 87, p. 1).

The Court agrees with the Chapter 13 Trustee insomuch as the settlement has already taken place, and thus the Motion to Approve Settlement is moot. Article III, § 2, cl. 1 of the Constitution "provides that the exercise of judicial power only extends to actual cases and controversies." *In re Johnson*, 583 B.R. 682, 688 (B.A.P. 6th Cir. 2018). "A live case or controversy exists only if the parties have an interest in the outcome of the litigation." *Clear Channel Outdoor, Inc. v. Knupfer (In re PW,*

20

*LLC)*, 391 B.R. 25, 33 (B.A.P. 9th Cir. 2008). "An actual controversy must exist at all stages of the proceeding which will result in a remedy that can be fashioned to address an interest or injury alleged by one of the parties." *Seifert v. Carlson (In re Seifert)*, 533 B.R. 265, 267 (B.A.P. 8th Cir. 2015) "If subsequent developments in the case preclude such a result the issue becomes constitutionally moot." *Id.*

Here, as between Mrs. Smith and the tortfeasor, the personal injury settlement has been fully consummated. Mrs. Smith has released her claims arising from the April 26, 2016 automobile accident, and the settlement money has been disbursed. Accordingly, there is no justiciable issue as to the gross settlement amount of $45,000.00, so to that extent the Court will deny as moot the Debtors' Motion to Approve Settlement. Further, the Court denies the Motion to Approve Settlement to the extent that it seeks to retroactively authorize Mrs. Smith to retain $32,500.00 in net proceeds. As will be discussed, the nonexempt portion of those net proceeds is property of the bankruptcy estate.

B. *Nunc Pro Tunc* Employment of Personal Injury Attorney

Arguably, Mrs. Smith's Application to Employ Mr. Heitmann is moot, as well. After all, having already settled her claim, she has no need for personal injury counsel at this juncture. Additionally, as will be explained below, nothing in the Bankruptcy Code *requires* the Court's approval of Mrs. Smith's hiring of Mr. Heitmann in this case. Nevertheless, the Debtors, in an effort to rectify their prior

21

failure to disclose the settlement of Mrs. Smith's personal injury claim by Mr. Heitmann, now affirmatively seek the Court's retroactive blessing of his employment by Mrs. Smith. The Chapter 13 Trustee opposes this request, arguing that the standards for *nunc pro tunc* employment are not satisfied here. The Court agrees with the Chapter 13 Trustee. Although *nunc pro tunc* retention of special counsel is permissible in some circumstances, the Debtors have not carried their burden in establishing that such relief is warranted in this case.

     i.   *Nunc Pro Tunc* Employment of Counsel is Sometimes Permissible

Recently, and in another context, the Supreme Court has cast doubt on the validity of *nunc pro tunc* orders. In *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696 (2020),[14] the Supreme Court stated that "[f]ederal courts may issue *nunc pro tunc* orders, or 'now for then' orders . . . to 'reflect the reality' of what has already occurred." *Id.* at 700-01 (quoting *Missouri v. Jenkins*, 495 U.S. 33, 349 (1990)). "Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." *Id.* at 701 (quoting

---

[14] In *Acevedo*, Catholic school employees filed suit in the Puerto Rico Court of First Instance when their pension benefits were terminated. The case was later removed to the United States District Court for the District of Puerto Rico because the Trust filed for Chapter 11 bankruptcy. On March 13, 2018, however, the bankruptcy court dismissed the Chapter 11 case. While the Puerto Rico Court of First Instance then issued certain orders in the case, the district court did not remand the case to the Puerto Rico Court of First Instance until August 20, 2018. In the order remanding the case, the district court stated that remand was *nunc pro tunc* to March 13, 2018, the date that the bankruptcy proceeding was dismissed. The Supreme Court held that the Puerto Rico Court of First Instance lacked jurisdiction to issue the disputed orders and that the district court's order remanding the case *nunc pro tunc* was improper.

22

*Cuebas y Arredondo v. Cuebas y Arredondo*, 223 U.S. 376, 390 (1912)). "Put colorfully," the Supreme Court stated, "[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact." *Id.* (quoting *United States v. Gillespie*, 666 F. Supp. 1137, 1139 (N.D. Ill. 1987). "Put plainly, the court 'cannot make the record what it is not.'" *Id.* (quoting *Jenkins*, 495 U.S. at 49).

Notwithstanding the Supreme Court's holding in *Acevedo*, many bankruptcy courts continue to grant *nunc pro tunc* employment applications. These courts observe that "*Acevedo* is . . . not a per se prohibition of all retroactive relief in all instances" but, rather, it "curtails only the inherent authority of federal courts to grant retroactive relief by *nunc pro tunc* orders which purport to create facts or rewrite history to support the retroactive relief granted." *In re Miller*, 620 B.R. 637, 641 (Bankr. E.D. Cal. 2020). Because "there is no requirement that compensated services must have been performed only after the effective date of an employment order," these courts reason that there is no need to create facts or rewrite history when granting such an application. *Id.* at 642. *See also In re Ramirez*, 633 B.R. 297, 307 (Bankr. W.D. Tex. 2021); *In re Moore*, No. 6:21-bk-70299, 2021 WL 3777538, at *4 (Bankr. W.D. Ark. Aug. 25, 2021; *In re Wellington*, 628 B.R. 19, 25 (Bankr. M.D.N.C. 2021). The Court agrees with this reasoning and finds that the instant Application to Employ does not run afoul of *Acevedo*. But that is not the end of the

23

analysis; the Court must determine whether *nunc pro tunc* relief is appropriate under the facts of this case.

    ii.    <u>The Standard for *Nunc Pro Tunc* Employment is Not Satisfied Here</u>

Courts use various tests to determine whether to grant requests to employ professionals *nunc pro tunc. See Collier on Bankruptcy* ¶ 327.03[3], at 327-25 (Richard Levin & Henry J. Sommer, eds., 16th ed.). Many courts require that "a movant seeking retroactive approval of a professional's employment must demonstrate that the professional would have been qualified for employment at the onset, and throughout the period of time for which the services are to be compensated; and, that the movant's failure to obtain prior approval at an earlier time is excusable." *In re Fisher*, No. 16-1911, 2019 WL 1875366, at *2 (Bankr. S.D. Ala. March 27, 2019) (quoting *In re Osprey Utah, LLC*, No. 16-2270 (Bankr. S.D. Ala. March 27, 2018)).[15]

Here, the Court finds that the Application to Employ Mr. Heitmann clearly satisfies the first prong of the test. The Chapter 13 Trustee stipulated at the September 23, 2021 hearing that Mr. Heitmann would have been qualified to represent Mrs. Smith in prosecuting her personal injury claim. (9/23/2021 Tr., p.

---

[15] This test has long been used in this district. *See In re Brown*, 555 B.R. 854 (Bankr. S.D. Ga. 2016) (Dalis, J.); *In re Glover*, No. 01-43454, 2002 WL 32667477 (Bankr. S.D. Ga. Dec. 23, 2002) (Davis, J.); *Matter of Concrete Prods., Inc.*, 208 B.R. 1000 (Bankr. S.D. Ga. 1996) (Davis, J.). Other courts require a showing of extraordinary or exceptional circumstances. *See, e.g., Mark J. Lazzo, P.A. v. Rose Hill Bank (In re Schupbach Inv., L.L.C.)*, 808 F.3d 1215, 1220-21 (10th Cir. 2015).

24

113). And Mr. Heitmann testified that he has practiced law for over twenty years and has managed his own personal injury practice since 2013. (9/23/2021 Tr., pp. 52-53).

The Application to Employ does not, however, satisfy the second prong, which requires a showing of excusable neglect. The record makes clear that Mr. Heitmann knew or should have known prior to settling Mrs. Smith's claim that she was in bankruptcy. Upon filing his employment application as to Mr. Smith's personal injury claim on August 17, 2017 (dckt. 51), Mr. Heitmann began receiving electronic service of filings in the case. (Dckt. 58, Ex. "D-6"). Between July 17, 2017, when Mr. Heitmann was added to the case, and the date of Mrs. Smith's settlement in August of 2018, no fewer than 18 docket events were served electronically on Mr. Heitmann's email address. He acknowledged that the email address used for electronic service was accurate. (9/23/2021 Tr., p. 60). As mentioned, his amended proposed order for Mr. Smith's settlement filed on August 2, 2017, correctly styled the case "In Re: Joseph Smith and Dena Smith." (Dckt. 63, p. 1). And at the August 29, 2017 hearing on Mr. Smith's settlement, Mr. Heitmann introduced himself as counsel for "Joseph and Dena Smith for an April 26, 2016 accident." (8/29/2017 Tr., p. 3).

Based on the testimony in this case, the Court finds that Mr. Heitmann simply forgot that this was a joint bankruptcy case by the time he settled Mrs. Smith's case

in August of 2018. He apparently did not flag or mark Mrs. Smith's file as a bankruptcy matter despite having prior knowledge of the Debtor's pending joint bankruptcy case. There is no evidence that Mr. Heitmann intentionally deceived the Court at any point; he would have had no reason to fail to seek the Court's approval of the settlement and of his attorney's fees.

While the Court finds no intentional misconduct on Mr. Heitmann's part and appreciates his candor at the September 23, 2021 hearing in acknowledging his mistake,[16] his neglect was not excusable. *See Collier on Bankruptcy* ¶ 327.03[3], at 327-27 ("The majority of courts hold that simple neglect or inadvertence on the part of the applicant in failing to file a timely retention application . . . is not a sufficient basis for granting retroactive approval of employment."). As one bankruptcy court explained:

> The question of whether a plaintiff is in bankruptcy is . . . very significant. Every trial attorney has or should have a PACER account with which to check federal court pleadings, including bankruptcy court pleadings. It takes only a few moments to check a client's name on PACER before distributing settlement proceeds to determine whether that client is in bankruptcy . . . . In this court's view, if a lawyer fails to check PACER to confirm that a client is not in bankruptcy immediately before distributing settlement proceeds, the lawyer runs the risk of being held liable for the settlement funds that would have otherwise gone into the bankruptcy estate.

---

[16] *See* 9/23/2021 Tr., pp. 79, 98-99.

26

*Fisher*, 2019 WL 1875366, at *2. Here, Mr. Heitmann testified that he had prior experience requesting bankruptcy court approval of his employment and of his clients' personal injury settlements. (9/23/2021 Tr., pp. 56-57, 90, 97). And, indeed, he properly sought and received approval to represent Mr. Smith and to disburse funds pursuant to his settlement in this very case. (Dckt. 51, 53, 56, 61, 63, 66). Under these circumstances, the Court will not approve Mrs. Smith's application to employ Mr. Heitmann *nunc pro tunc*.

C. Disgorgement of Attorney's Fees and Expenses

Even if the Court were to approve retroactively Mrs. Smith's employment of Mr. Heitmann, the Court will grant the Trustee's request to disallow Mr. Heitmann's fees and expenses in the amount of $11,414.71. For the reasons explained below, Mr. Heitmann must disgorge these fees and expenses in consequence of his failure to comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, namely § 329(a) and Rule 2016(b).

  i.    Section 329 Requires Disclosure of Compensation Paid or Promised to Personal Injury Counsel

Bankruptcy courts disagree as to which provision of the Bankruptcy Code, § 329(a) or § 327(e), governs a Chapter 13 debtor's employment of personal injury counsel.[17] Some courts rely on § 327(e), which provides as follows:

---

[17] Some jurisdictions have local rules governing a debtor's employment of special counsel. For example, the Southern District of Texas requires that "[a]pplications to retain special counsel in

27

> [T]he trustee, with the court's approval, may employ, for
> a specified special purpose, other than to represent the
> trustee in conducting the case, an attorney that has
> represented the debtor, if in the best interest of the estate,
> and if such attorney does not represent or hold any interest
> adverse to the debtor or to the estate with respect to the
> matter on which such attorney is to be employed.

11 U.S.C. § 327(e). For these courts, "the word 'trustee' in § 327(e) includes a

Chapter 13 debtor-in-possession." *In re Goines*, 465 B.R. 704, 706 (Bankr. N.D. Ga.

2012) (Sacca, J.). "In other words, the Chapter 13 debtor, if he is in possession of a

non-bankruptcy cause of action, has the authority and duty to file an application to

employ special counsel[.]" *Id.*

Other courts disagree, pointing out that the plain language of § 327(e) only

applies to the trustee's employment of a professional. *See, e.g., In re Scott*, 531 B.R.

640, 645 (Bankr. N.D. Miss. 2015) ("Nothing in the Bankruptcy Code suggests that

the term 'trustee' used in § 327(e) is intended to include a chapter 13 debtor."); *In*

*re Thornton*, No. 04-51703 JDW, 2005 WL 4980268, at *3 (Bankr. S.D. Ga. Aug.

8, 2005) (Walker, J.) ("By its terms, the statute does not apply to attorneys hired by

a Chapter 13 debtor."); *In re Bowker*, 245 B.R. 192, 200 n.8 (Bankr. D.N.J. 2000)

---

an individual chapter 7, 11, 12, or 13 case for the purpose of prosecuting a tort claim must be
filed in a form as published on the Court's website." Southern District of Texas Bankruptcy
Local Rule (BLR) 2014-1(d). *See Wright v. Csabi (In re Wright)*, 578 B.R. 570, 582-83 (Bankr.
S.D. Tex. 2017) (finding that attorneys failed to comply with BLR 2014-1). The Southern
District of Georgia has no applicable local rule or general order.

("Section 327 which requires prior court approval for retention of professionals by a trustee . . . does not apply to a chapter 13 debtor[.]").

Having considered the matter, the Court finds that § 327(e) applies not to debtors but to trustees only. This interpretation is bolstered by the recent Eleventh Circuit decision of *Microf LLC v. Cumbess (In re Cumbess)*, 960 F.3d 1325 (11th Cir. 2020). There, the Eleventh Circuit explained that the terms "trustee" and "debtor" are "well understood in bankruptcy law, and they are well understood to refer to different people (or entities, as the case may be)." *Cumbess*, 960 F.3d at 1333. "[T]he trustee and the debtor are two of the central players in a Chapter 13 case, and they each have their own unique roles, interests, and responsibilities." *Id.* It is therefore "exceedingly unlikely that Congress would have used the term 'trustee' . . . to mean 'debtor.'" *Id.*

Because § 327(e) "does not apply to attorneys hired by a Chapter 13 debtor," such debtor's employment of a personal injury attorney is "not subject to court approval."[18] *Thornton*, 2005 WL 4980268, at *3. *See also In re Atkins*, No. 01-40125-JDW, 2005 WL 4980279, at *3 (Bankr. S.D. Ga. Dec. 23, 2005) (Walker, J.).

---

[18] Even if a personal injury attorney's employment itself is not subject to approval under § 327(e), because fees are subject to disclosure under § 329(a) and possible reduction under § 329(b), the better practice is to seek approval of employment, and the terms of the agreement, prior to prosecuting a personal injury action on the debtor's behalf.

29

But that does not mean that personal injury counsel has *no* obligations to the bankruptcy court. Section 329(a) of the Code states:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). This provision "most clearly applies to the debtor's bankruptcy attorney and any attorney who may have provided pre-bankruptcy planning[.]" *Thornton*, 2005 WL 4980268, at *3. Nevertheless, some courts find that services are "in connection with" a bankruptcy case "if it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case." *In re Gorski*, 519 B.R. 67 (Bankr. S.D.N.Y. 2014) (quoting *In re Rheuban*, 121 B.R. 368, 378 (Bankr. C.D. Cal. 1990)). Applying this standard, courts have held that special counsel's representation of the debtor in a personal injury claim is sufficiently intertwined with the bankruptcy case to be in connection with the bankruptcy case. *See, e.g., Morris v. King (In re Rosales)*, 621 B.R. 903, 924 (Bankr. D. Kan. 2020) ("[T]he success of the PI litigation was crucial to debtors' ability to fund their confirmed plan[.]"); *Thornton*, 2005 WL 4980268, at *3 ("[T]he

30

Court does have statutory authority over [the personal injury attorney's] fee" under § 329(a).).

The Court adopts this reasoning. In the Eleventh Circuit, as will be discussed below, post-confirmation personal injury claims are property of the estate. *See Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir. 2008). Therefore, the Court finds that Mr. Heitmann's representation of Mrs. Smith in such a claim was in connection with the bankruptcy case for purposes of § 329(a). *See Thornton*, 2005 WL 4980268, at *4 ("[T]o the extent the value of the personal injury claim exceeds the amount of Debtor's exemption, the excess funds recovered would be property of the estate."). Having found that § 329(a), which is implemented by Bankruptcy Rule 2016(b), applies to Mr. Heitmann's representation of Mrs. Smith, the Court must determine what consequences should flow from his failure comply with that provision.

ii.    <u>Mr. Heitmann Must Disgorge his Fees and Expenses</u>

"[W]hen individual Chapter 13 debtors employ attorneys (even as special counsel), it triggers the requirements of § 329 [and] Bankruptcy Rule 2016[.]" *Rosales*, 621 B.R. at 923. Section 329, as mentioned, requires "[a]ny attorney" representing a debtor "in connection with" a bankruptcy case to "file with the court a statement of the compensation paid or agreed to be paid . . . for services rendered . . . in connection with" the case. 11 U.S.C. § 329(a). This Code section is

31

implemented by Bankruptcy Rule 2016(b), which requires that "[e]very attorney for a debtor . . . shall file . . . the statement required by § 329 of the Code[.]" Fed. R. Bankr. P. 2016(b). The Rule contemplates that the required statement must be filed within 14 days after the petition date or "within 14 days after any payment or agreement not previously disclosed." *Id.*

Here, Mr. Heitmann did not timely disclose his attorney's fees in connection with his prosecution of Mrs. Smith's personal injury claim, and he therefore failed to comply with these requirements. "The Bankruptcy Code and Rules require the utmost disclosure and candor from professionals seeking employment and compensation from the bankruptcy estate." *In re Shelnut*, 577 B.R. 605, 608 (Bankr. S.D. Ga. 2017) (Barrett, J.). As some courts put it, "the lack of necessity for court approval" of a personal injury attorney's employment under § 327(e) "heightens rather than diminishes the need for court supervision over the compensation process." *Thornton*, 2005 WL 4980268, at *3 (quoting *In re Taylor*, 216 B.R. 515, 523 (Bankr. E.D. Pa. 1998)).

"Failure to comply with § 329 and Bankruptcy Rule 2016(b) is grounds to deny all fees and costs sought by counsel." *In re Chatkan*, 496 B.R. 687, 695 (Bankr. E.D.N.Y. 2012). *See also SE Prop. Holdings, LLC v. Stewart (In re Stewart)*, 970 F.3d 1255, 1267 (10th Cir. 2020) ("[F]ull disgorgement . . . should be the default sanction" for failure to disclose under § 329); *Rosales*, 621 B.R. at 928 ("Full

disgorgement of fees is the default sanction for attorneys' noncompliance with § 329 [and] Rule 2016[.]"); *In re Frye*, 570 B.R. 21, 28 (Bankr. D. Vt. 2017) ("The court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order debtor's counsel to disgorge fees for failure to disclose."); *Gorski*, 519 B.R. at 73 ("Many courts, perhaps the majority, punish defective disclosure by denying all compensation."); *Glover*, 2002 WL 32667477, at *1 ("[I]f an attorney has not been properly retained and approved by the Court, disallowance of all fees is clearly authorized.").

Mr. Heitmann inserted himself into this case by representing the Debtors in their personal injury claims. He correctly and timely sought Court approval of his employment by Mr. Smith and of the settlement of Mr. Smith's personal injury claim. He failed to do the same with respect to Mrs. Smith's claim and thereby violated § 329 and Bankruptcy Rule 2016. Consequently, the Court will exercise its discretion to require Mr. Heitmann to disgorge the amount of $11,414.71, which represents his fees and expenses in connection with Mrs. Smith's settlement.

D. The Trustee's Request for Turnover of $10,939.63 to the Estate

Not content with the disgorgement of Mr. Heitmann's $11,414.71 attorney's fees and expenses, the Chapter 13 Trustee requests, in his Motion for Turnover and Motion for Sanctions, that Mr. Heitmann be required to pay the estate the additional amount of $10,939.63. In support of this request, the Trustee offers two alternative

arguments. First, the Trustee contends that Mr. Heitmann's conduct damaged the estate in the amount of $10,939.63 because this amount, when added to the disgorged fees and expenses, would provide a 100% dividend to unsecured creditors in the case. (Dckt. 110, p. 6; Dckt. 111, p. 9). Second, the Trustee contends that Mr. Heitmann should be sanctioned in the amount of $10,939.63 based on his misfeasance in this case. (Dckt. 112, pp. 9-10). For the reasons set forth below, the Court will deny without prejudice the Trustee's request for turnover of the additional funds as damages suffered by the estate and, further, declines to impose additional sanctions beyond the return of the attorney's fees and expenses.

i.     Mr. Heitmann Will Not be Required to Turn Over the Additional Funds under § 542(a) at this Time

There is no dispute in this case that the non-exempt proceeds of Mrs. Smith's personal injury settlement were property of the bankruptcy estate. In the Eleventh Circuit, post-confirmation personal injury claims are property of the bankruptcy estate pursuant to *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir. 2008).[19] There, as in this case, the Chapter 13 debtor suffered personal injuries in an

---

[19] *Waldron* was the Eleventh Circuit's second attempt to reconcile the apparent contradiction between § 1306(a) and § 1327(b) of the Bankruptcy Code. The former states that in a Chapter 13 case, property of the estate includes "in addition to the property specified in section 541 of this title . . . all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first[.]" 11 U.S.C. § 1306(a)(1). The latter provides that in a Chapter 13 case, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). Eight years before *Waldron*, the Eleventh Circuit adopted the "estate

automobile accident that took place after confirmation but before the completion of plan payments. The debtor challenged the bankruptcy court's ruling that the personal injury claims were property of the estate and that any settlement must be disclosed by amending the schedules. On appeal, the Eleventh Circuit held, in agreement with the bankruptcy court and the district court, that such post-confirmation claims were property of the estate under § 1306(a). *Id.* at 1242-43. Further, the Eleventh Circuit held that the bankruptcy court did not abuse its discretion by requiring the debtor to disclose any settlement of those claims. The purpose of such disclosures, per *Waldron*, is to allow creditors to "move the bankruptcy court to modify the plan to increase payments made by the debtor to satisfy a larger percentage of the creditors' claims." *Id.* at 1245. This case falls squarely under *Waldron*.

Although the Trustee seeks turnover from Mr. Heitmann based on his improper exercise of control and disbursal of these estate assets, the Trustee does not cite the relevant provision of the Bankruptcy Code, § 542(a), or discuss its required elements. The purpose of § 542(a) is to "empower the trustee in bankruptcy to get hold of the property of the debtor, some of which will be in the possession, custody, or control of third parties." *In re Hall*, 502 B.R. 650, 655-56 (Bankr. D.D.C.

---

transformation" approach whereby §§ 1306(a) and 1327(b) are read "to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1340 (11th Cir. 2000).

35

2014) (quoting *Boyer v. Carlton, Fields, Ward, Emmanuel Smith & Cutler, P.A. (Matter of USA Diversified Prods., Inc.)*, 100 F.3d 53, 56 (7th Cir. 1996)). In the Chapter 13 context, turnover provides assets by which the plan may be funded. *White v. Brown (In re White)*, 389 B.R. 693, 698-99 (B.A.P. 9th Cir. 2008); *Rosales*, 621 B.R. at 921. In pertinent part, § 542 provides as follows:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). In other words, the trustee must establish the following elements: "(1) the property sought to be turned over is property of the estate; (2) the party against whom turnover is sought is an 'entity;' (3) the entity was in possession, custody, or control of the property during the case; and (4) the trustee may use or sell the property." *Rosales*, 621 B.R. at 916-17.

Here, three of the four elements are clearly met. The non-exempt proceeds of Mrs. Smith's settlement were property of the estate under *Waldron*, as discussed above. The first element is therefore satisfied. Likewise, the second element is satisfied because Mr. Heitmann is an entity, which is defined in § 101(15) to include a "person." 11 U.S.C. § 101(15). And the fourth element is "undeniably met"

36

because § 542(a) "is the means by which a trustee collects property of the estate and administers the estate by paying unsecured creditors and claims." *Rosales*, 621 B.R. at 921. But the third element, requiring the entity to be in possession, custody, or control of estate property, is more complicated. Mr. Heitmann at one time had possession of Mrs. Smith's nonexempt settlement proceeds, but he no longer does, having disbursed them to Mrs. Smith. Courts disagree on whether present possession is necessary to satisfy the requirements for turnover, with the minority view holding that "an entity cannot be compelled to turn over property no longer within its control or possession." *Collier on Bankruptcy* ¶ 542.03[1], at 542-13 (16th ed.).[20]

But regardless of whether the elements of § 542(a) are satisfied here, the Trustee has improperly sought to recover the additional funds totaling $10,939.63 from Mr. Heitmann by way of a motion filed in the bankruptcy case. Bankruptcy Rule 7001(1) requires that "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002" must be brought as an adversary proceeding. Fed. R. Bankr. P. 7001(1). "A turnover action is an adversary proceeding which must be commenced by a properly filed and served

---

[20] *Compare Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 428 (8th Cir. 2007) (holding that § 542(a) "permits a trustee to compel turnover only from entities which have control of property of the estate or its proceeds at the time of the turnover demand"), *with Beaman v. Vandeventer Black, LLP (In re Shearin)*, 224 F.3d 353, 356 (4th Cir. 2000) (construing "the language 'during the case' to refer to the entire bankruptcy case[.]").

complaint." *In re MF Global Inc.*, 531 B.R. 424, 431 (Bankr. S.D.N.Y. 2015) (quoting *Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990)). *See also Collier* ¶ 542.02, at 542-7 ("A trustee must file an adversary proceeding to bring a turnover action against a nondebtor.").

The requirement to file an adversary proceeding is not simply a matter of form over substance.[21] At least for now, the Trustee has only sought turnover from Mr. Heitmann, not from the Debtors.[22] Any request for turnover from the Debtors may be accomplished by motion. *See In re Waggoner*, 622 B.R. 915, 920 (Bankr. D.N.M. 2020) ("If a debtor fails to turn over estate property, the trustee may file a motion to compel turnover."). But should the Trustee elect to file an adversary proceeding against Mr. Heitmman, the Debtors may be jointly and severally liable with Mr. Heitmann under § 542(a). *See Rosales*, 621 B.R. at 921. *See also Doucet v. Cooper (In re Cooper)*, 263 B.R. 835 (Bankr. S.D. Ohio 2001). "There may only be a single recovery of the total [personal injury] settlement[.]" *Rosales*, 621 B.R. at 931. Thus, Mr. Heitmann may seek to have the Debtors joined as defendants in an adversary

---

[21] Some courts are less fastidious about the differences between an adversary proceeding and a contested matter initiated by motion. *See, e.g., In re Ballard*, 502 B.R. 311 (Bankr. S.D. Ohio 2013) (holding that "the procedures afforded in contested matters provide all the process that is due").

[22] When asked at the September 23, 2021 hearing whether the Trustee sought turnover of any non-exempt funds from the Debtors, the Trustee's counsel answered in the negative, stating that the Debtors "do not have funds to tender to the [T]rustee." (9/23/2021 Tr., pp. 119, 124). But the record is silent as to the resources from which the Debtors might pay those funds into the estate.

proceeding even if the Trustee does not. For these reasons, the Court finds that an adversary proceeding would be required for the Trustee to recover the additional funds from Mr. Heitmann pursuant to § 542(a).

ii.   Mr. Heitmann Will Not be Further Sanctioned

According to the Trustee, "Mr. Heitmann's misfeasance in this matter supports a finding of bad faith" and thus Mr. Heitmann should "be sanctioned and ordered to remit to the Trustee, in addition to his fees and costs . . . the amount of $10,939.63[.]" (Dckt. 112, p. 10). The Trustee recites, correctly, that a bankruptcy court has authority under § 105(a) "to impose sanctions . . . if a party violates a court order or rule." *DeLauro v. Porto (In re Porto)*, 645 F.3d 1294, 1303 (11th Cir. 2011). Additionally, bankruptcy courts "have the inherent power to impose sanctions on parties and lawyers" upon a showing of bad faith. *Gwynn v. Walker (In re Walker)*, 532 F.3d 1304, 1309 (11th Cir. 2008). These powers, however, are discretionary. *In re Royal Manor Mgmt., Inc.*, 525 B.R. 338, 368 (B.A.P. 6th Cir. 2015) ("[I]nherent powers must be exercised with restraint and discretion."). In this case, the Court will exercise its discretion to deny the Chapter 13 Trustee's request to sanction Mr. Heitmann beyond the requirement that he disgorge his $11,414.71 in fees and expenses.

As Mr. Heitmann readily admitted at the September 23, 2021 hearing, he mistakenly failed to file a motion to approve Mrs. Smith's personal injury settlement,

along with the required disclosures under § 329(a), in 2018. (9/23/2021 Tr., p. 79, 98-99). While this oversight reflects poorly on his record keeping, it does not indicate any bad faith on his part. As noted, there would have been no benefit whatsoever to Mr. Heitmann in failing to apprise the Court and the Trustee of the settlement, and thus he had no motive not to file the required motions. Moreover, the evidence presented at the evidentiary hearing demonstrated that Mr. Heitmann obtained a fair and reasonable settlement for Mrs. Smith in light of the parties' insurance policy limits. (9/23/2021 Tr., pp. 72-74). And, as Mr. Heitmann testified, he worked for the Debtors at a reduced contingency of only 25%. (9/23/2021 Tr., pp. 96-97, 103).

Having considered the totality of these circumstances, the Court finds that further sanctions are not warranted under either § 105 or the Court's inherent authority. The requirement that Mr. Heitmann disgorge his attorney's fees and expenses in the amount of $11,414.71 serves as sufficient punishment for his mistakes. Also weighing against the imposition of sanctions is the existence of an alternative remedy against Mr. Heitmann, namely an adversary proceeding under § 542(a), as discussed above, whereby the Trustee may seek recovery of the disbursed settlement funds. To accomplish by sanction what otherwise must be done by adversary proceeding would be to ignore the very purpose of having an adversary proceeding, which is "to provide 'greater procedural protection . . . requiring a

complaint and a summons, providing for an answer and discovery, and generally concluding only after trial or a dispositive motion.'" *In re Cochran*, 614 B.R. 565, 571 (Bankr. N.D. Iowa 2020) (quoting *SLW Cap., LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 237 (3d Cir. 2008)). The Court will therefore deny the Trustee's Motion for Sanctions.


## IV. <u>Conclusion</u>

For the reasons set forth above, the Court will enter a separate order denying as moot the Debtors' Motion to Approve Settlement, denying the Chapter 13 Trustee's Motion for Sanctions, and denying without prejudice the Chapter 13 Trustee's Motion for Turnover. Additionally, the Court will deny the Debtors' Application to Employ and will direct Mr. Heitmann to disgorge the amount of $11,414.71 to the Chapter 13 Trustee as a sanction for his violation of the disclosure requirements of § 329(a) and Bankruptcy Rule 2016(b). To this point, the parties have not expressly asked the Court to rule on the proper disposition of the $11,414.71 that Mr. Heitmann must disgorge or of any additional funds that the Trustee may seek under § 542(a) through an adversary proceeding against Mr.

Heitmann or by way of a motion against the Debtors, and thus those issues are not presently before the Court.[23]

Dated at Savannah, Georgia, this 23rd day of February, 2022.

Edward J. Coleman, III, Chief Judge
United States Bankruptcy Court
Southern District of Georgia

---

[23] At various times in this case, the Trustee has suggested that he can unilaterally distribute such funds to unsecured creditors, but he has not yet moved to do so. (Dckt. 110, pp. 7-10). Nor has any party in interest yet sought plan modification under § 1329(a) to provide for the distribution to unsecured creditors of any funds in connection with Mrs. Smith's personal injury settlement. One of the statutory bases for plan modification is to "increase or reduce the amount of payments on claims of a particular class provided for by the plan[.]" 11 U.S.C. § 1329(a)(1). Thus, a trustee might seek to modify a debtor's plan to provide for the distribution of nonexempt settlement proceeds. The Code does not specify, however, whether such a modification is *required* in these circumstances, though some case law suggests that it is. *See, e.g., In re Ezzell*, 438 B.R. 108, 121 (Bankr. S.D. Tex. 2010) (quoting *EconoLube N' Tune, Inc. v. Frausto (In re Frausto)*, 259 B.R. 201, 210 (Bankr. N.D. Ala. 2000)). *See also Waldron*, 536 F.3d at 1245 (explaining that the purpose of "disclosure of postconfirmation assets" is to "give[] the trustee and creditors a meaningful right to request, under section 1329, a modification of the debtor's plan to pay his creditors"); *Sys. & Servs. Techs., Inc. v. Davis (In re Davis)*, 314 F.3d 567 (11th Cir. 2002) (stating that Chapter 13 Trustee cannot "bypass[] the adjudicative process surrounding [] Plan modification"). In this district, the Trustee often simply requests the funds after learning of a proposed settlement, and Debtors routinely consent to such requests by agreeing to turn over the non-exempt settlement proceeds, obviating the need for a modified plan to be filed. On other occasions, the Trustee seeks to modify the plan, many times even before the amount of a settlement is known, and likewise debtors typically consent to such modification. Assuming that plan modification is required, any proposed modification would present a number of issues for the parties and the Court to address. The Court would be required to determine whether such modification would be time-barred under § 1329(a) or § 1329(c). *Compare In re Humes*, 579 B.R. 557, 564 (Bankr. D. Colo. 2018), *with In re Lugo*, No. 18bk18603, 2020 WL 1817853, at *2-3 (Bankr. N.D. Ill. March 12, 2020). Additionally, any proposed modification must be feasible under § 1325(a)(6). Finally, it is unclear whether Mrs. Smith may yet claim an exemption in the settlement proceeds under O.C.G.A. § 44-13-100(a)(11)(E) in addition to the exemption already claimed under O.C.G.A. § 44-13-100(a)(11)(D).